UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Jacobs Trading, LLC,

        Plaintiff,

v.                                                                      Civil No. 11-354 (JNE/AJB)
                                                                        ORDER

Ningbo Hicon International Industry
Co., Ltd.,

        Defendant.

        Plaintiff Jacobs Trading, LLC ("Jacobs") brought this action against Defendant Ningbo

Hicon International Industry Co., Ltd. ("Hicon"), asserting claims of common law fraud and

consumer fraud related to Plaintiff's purchase of allegedly counterfeit "Comobar" brand espresso

machines from Defendant for $139,500.  Hicon moved to dismiss for lack of personal

jurisdiction and/or improper venue.  On February 17, 2012, the Court permitted Jacobs to

conduct limited jurisdictional discovery and allowed the parties to supplement their briefs after

discovery was completed.  For the reasons stated below, the Court now grants Hicon's Motion to

Dismiss.

## I.      BACKGROUND

### A.  The Transaction

        Jacobs is a Minnesota LLC with its principal place of business in Hopkins, Minnesota.[1]

Hicon is a company formed under the laws of the People's Republic of China and has its

principal place of business in China.  On November 2, 2009, Jacobs' agent, Michael Marcotte,[2]

---

[1]      Jacobs is now known as "ILJ Enterprises, LLC."  For the sake of clarity, the Court will
continue to refer to it as "Jacobs."

[2]      Marcotte is a Minnesota resident who is living in China under a business work permit.
Marcotte Decl. ¶ 1.

called Hicon to inquire about what overstock goods Hicon might have available to purchase.

Marcotte spoke with Hicon employee David Hu and told him that he represented Jacobs, a

Minnesota wholesaler interested in purchasing goods for resale.  Marcotte followed this initial

phone call with an email inquiring about the availability of overstock goods.  Hu allegedly

represented to Marcotte that Hicon had an overstock of authentic "Comobar" coffeemakers that

it was authorized to sell.  Hu made an opening offer to Marcotte for the sale and purchase of the

coffeemakers.  In response, on November 5, 2009, Marcotte traveled to Hicon's warehouse to

inspect the coffeemakers.  Marcotte met Hu and gave him his business card indicating that

Jacobs is a Minnesota company.  Marcotte and Hicon entered into negotiations for the sale of the

coffeemakers.  Jacobs alleges that during these negotiations, Hu made false statements which

induced Jacobs to purchase the allegedly counterfeit products.  Hicon arranged for the products

to be shipped to Minnesota, "F.O.B. Ningbo," through CHRistal Lines, a shipping

company/freight forwarder.[3]  The invoice was addressed to Jacobs' address in Minnesota.

**B.  Hicon's Other Contacts with Minnesota**

Jacobs states that it "understands from third party retailers and vendors that Hicon sells a

substantial quantity of goods into the State of Minnesota."  Pl.'s Mem. Opp. 4.  For support,

Jacobs refers to the Affidavit of Keith Carpenter, which states that "Jacobs has relationships with

various retailers and vendors throughout the State of Minnesota" and "[t]hrough these retailers, I

have been told that [Hicon] sells a substantial amount of goods into Minnesota."  Carpenter Aff.

---

[3]      After conducting jurisdictional discovery, Jacobs provided the Court with a bill of lading
that identifies CHRistal Lines as the carrier for the shipment of coffeemakers.  Jacobs asserts that
the bill of lading identifies C.H. Robinson International, Inc. as the freight forwarder, but this
aspect of the document is illegible.  The address for the freight forwarder is in Eden Prairie,
Minnesota.  Despite Jacobs' assertion that C.H. Robinson International, Inc. "is apparently a
parent or affiliate of CHRistal Lines," Pl.'s Second Supp. Mem. 2, there is no evidence to
support this statement—thus, it remains unclear what, if any, relationship exists between the two
entities.

¶¶ 3,4.  In November 2011, Hicon allegedly engaged in one transaction with another Minnesota-based purchaser, involving the sale of chest freezers.

Hicon has never maintained an office, manufacturing plant or facility in Minnesota, does not conduct meetings in Minnesota, and does not maintain any bank accounts in Minnesota.  It does not own any property in Minnesota, have any employees in Minnesota, or have a phone number or mailing address in Minnesota.  It is not registered to conduct business in Minnesota and has never been a resident of Minnesota.  Hicon does not maintain a registered agent for service in Minnesota and has never sent its employees to Minnesota to transact business on its behalf.  It has never executed a contract in Minnesota, nor has it ever executed a contract to be performed in Minnesota.  Hicon has never consented or been held to be subject to personal jurisdiction in any Minnesota court.

Hicon does not advertise in the United States and has never specifically directed advertising to a publication soliciting Minnesota companies.  It previously advertised through a website located at http://www.hicongj.cc/en/, which stated that some of Hicon's products "have made it to international supermarkets like WAL-MART, Auchan and Home Depot" and that Hicon "is one of China-based strategic partners of home appliance giants like GE, Electrolux and Haier America."  The website also stated that "[a]ll critical equipment was introduced from USA, Japan or Germany" and that Hicon "has the right to handle import and export directly and the products sell to more than 50 countries and regions in Europe, America and Asia."  Further, "[t]he Hicon product series are certified to CCC, ROHS, CB, CE, UL, ETL and GS, some even certified to the Energy Star and NSF of USA."  It appears as though the web address http://www.hicongj.cc/en/ is no longer operational, but Hicon now operates a website located at http://www.hiconchina.trade51.com/.  This new website states that Hicon "import[s] key

3

equipment from the USA, Japan and Germany" and that its products "sell well on markets of

more than thirty countries and regions, such as the USA . . . ."  Neither website targeted residents

in any particular country or state.  Consumers cannot make orders through the websites, but they

can click on a link to email the company.  Neither website makes any reference to Hicon's

contacts, if any, with Minnesota.

## II.    DISCUSSION

To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must establish

a prima facie case that the forum state has personal jurisdiction over the defendant.  *Digi-Tel*

*Holdings, Inc. v. Proteq Telecomms. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996).  A court must

view the evidence in the light most favorable to the plaintiff when deciding whether the plaintiff

has made the requisite showing.  *Id.*  The court must determine whether the exercise of personal

jurisdiction over a non-resident defendant complies with the state long-arm statute, and if so,

whether it comports with due process.  *Id.*  Minnesota's long-arm statute, Minn. Stat. § 543.19,

confers jurisdiction to the fullest extent permitted by due process.  *Coen v. Coen*, 509 F.3d 900,

905 (8th Cir. 2007); *In re Minn. Asbestos Litig.*, 552 N.W.2d 242, 246 (Minn. 1996).  The Court

therefore need only consider whether the requirements of due process are satisfied to resolve the

jurisdictional challenges.  *Wessels, Arnold & Henderson v. Nat'l Med. Waste, Inc.*, 65 F.3d 1427,

1431 (8th Cir. 1995); *Valspar Corp. v. Lukken Color Corp.*, 495 N.W.2d 408, 411 (Minn. 1992).

Due process allows a court to exercise personal jurisdiction over a non-resident defendant

if the defendant has "certain minimum contacts with [the forum state] such that the maintenance

of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe*

*Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463

(1940)).  The defendant's contacts with the state must be such that the defendant "should

reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). Unilateral activity by one who claims a relationship with the defendant does not satisfy the minimum contacts requirement. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Instead, the defendant must act so as to "purposefully avail[] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Id.* "Personal jurisdiction depends upon a 'defendant's contacts with the forum in the aggregate, not individually' and the 'totality of the circumstances.'" *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1390 (8th Cir. 1997) (quoting *Northrup King Co. v. Compania Productora Semillas Algondoneras Selectas, S.A.*, 51 F.3d 1383, 1388 (8th Cir. 1995)).

Five factors determine whether the exercise of personal jurisdiction over a defendant comports with due process. *See Nw. Airlines*, 111 F.3d at 1390. The factors are: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the forum state; (3) the relation of the cause of action to the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties. *Id.* The last two factors are secondary. *Id.*

The third factor distinguishes general jurisdiction from specific jurisdiction. *See Wessels*, 65 F.3d at 1432 n.4. The defendant's maintenance of continuous and systematic contacts with a state may subject it to the state's general jurisdiction, that is, the state may assert personal jurisdiction over the defendant in a suit regardless of where the cause of action arose. *See id.* Specific jurisdiction refers to the state's assertion of personal jurisdiction over a defendant in a suit that arises out of or relates to the defendant's contacts with the state. *See id.* Jacobs

contends that the Court has specific jurisdiction over Hicon.  Jacobs also appears to argue that the Court has general jurisdiction over Hicon.

## A.  Specific Jurisdiction

Hicon argues that it does not have the requisite minimum contacts to subject it to this Court's jurisdiction.  The contacts that Jacobs alleges are sufficient to satisfy the requirements of due process are: (1) Hicon knew it was transacting business with a Minnesota company because Marcotte told Hu he represented a Minnesota company and Marcotte's business card indicated that Jacobs' place of business was in Minnesota; (2) Hicon's invoice to Jacobs was addressed to Jacobs' office in Minnesota; (3) Hicon arranged for the product to ultimately be shipped to Minnesota, albeit "F.O.B. Ningbo"; and (4) Hicon contracted with a Minnesota-based shipping/freight forwarding company to ship the goods.

These contacts are insufficient to support a finding of personal jurisdiction.  First, the fact that Hicon entered into a contract and transacted business with a Minnesota company does not alone subject Hicon to personal jurisdiction in Minnesota.  *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478-79 (1985).  "It is a defendant's contacts with the forum state that are of interest in determining if in personam jurisdiction exists, not its contacts with a resident." *Mountaire Feeds, Inc. v. Agro Impex, S.A.*, 677 F.2d 651, 655 (8th Cir. 1982) (quoting *Aaron Ferer & Sons Co. v. Atlas Scrap Iron & Metal Co.*, 558 F.2d 450, 455 n.6 (8th Cir. 1977)). Instead of examining the citizenship of the parties to the contract, the Court must evaluate the "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" when determining "whether the defendant purposefully established minimum contacts within the forum." *Burger King Corp.*, 471 U.S. at 478; *see also Mountaire Feeds, Inc.*, 677 F.2d at 655 ("Merely entering into a contract with a forum resident

does not provide the requisite contacts between a (nonresident) defendant and the forum state."
(quoting *Iowa Elec. Light & Power Co. v. Atlas Corp.*, 603 F.2d 1301, 1303 (8th Cir. 1979))).

Jacobs' agent, Marcotte, who was apparently living in China, initiated the relationship
with Hicon by calling to inquire about Hicon's available goods.  Marcotte followed his initial
phone call with an email.  He then traveled to Hicon's warehouse in China to inspect the
products.  All of the negotiations related to the sale at issue occurred in China.  The contract was
complete upon the sale of the products—it did not contemplate any future obligations or ongoing
relationship between the parties.  The one lone invoice addressed to Jacobs' Minnesota office
does not demonstrate that Hicon purposefully availed itself of the privilege of conducting
activities in Minnesota.  *See Scullin Steel Co. v. Nat'l Ry. Utilization Corp.*, 676 F.2d 309, 314
(8th Cir. 1982) ("The use of interstate facilities (telephone, the mail) [and] the making of
payments in the forum state . . . are secondary or ancillary factors and cannot alone provide the
'minimum contacts' required by due process.").

Further, although the products were ultimately shipped to Minnesota, they were shipped
"F.O.B. Ningbo."  Delivery terms are "relevant to the finding of personal jurisdiction."  *Wells
Dairy, Inc. v. Food Movers Int'l, Inc.*, 607 F.3d 515, 520 n.2 (8th Cir. 2010); *see also Bell Paper
Box, Inc. v. U.S. Kids, Inc.*, 22 F.3d 816, 820 n.2 (8th Cir. 1994) ("Such delivery terms are not
irrelevant to a finding of personal jurisdiction . . . .").  Delivery terms that provide for delivery in
the forum state can support a finding of personal jurisdiction, *see, e.g.*, *K-V Pharm. Co. v. J.
Uriach & CIA, S.A.*, 648 F.3d 588, 594 (8th Cir. 2011), but even the provision for delivery
within the forum state does not alone provide the "minimum contacts" required by due process,
*Scullin Steel Co.*, 676 F.2d at 314.  Here, the delivery term "F.O.B. Ningbo" provided for
delivery *outside* of the forum state—in Ningbo, China.  Delivery terms providing for delivery

outside of the forum state do not necessarily preclude a finding of personal jurisdiction. *See, e.g.*, *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001) (finding sufficient minimum contacts between the defendant and the forum state even though the goods at issue were to be sold "F.O.B. Hong Kong"); *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 471-72 (5th Cir. 2006) ("[A] F.O.B. term does not prevent a court from exercising personal jurisdiction over a non-resident defendant where other factors, such as the quantity and regularity of shipments, suggest that jurisdiction is proper."). Here, however, there are no other contacts and there is no evidence of such a "quantity and regularity of shipments" to Minnesota that suggests that jurisdiction is proper in this forum. The delivery term providing for delivery in Ningbo, China, does not preclude a finding of personal jurisdiction, but certainly weighs against such a finding.

Jacobs' reliance on Hicon's use of a Minnesota-based shipping/freight forwarding company is also misplaced.[4] Jacobs' lawsuit against Hicon did not arise from or relate to Hicon's shipping contract or relationship with CHRistal Lines or C.H. Robinson International, Inc. Thus, this Minnesota contact is unrelated to the alleged fraud that is at issue in this litigation. Jacobs also asserts that Hicon's contract with CHRistal Lines included a forum selection clause, designating the United States District Court for the District of Minnesota as the exclusive venue in which to litigate disputes arising out of or related to the services provided by CHRistal Lines. This argument suffers from several infirmities.

First, there is no evidence that the shipping contract between Hicon and CHRistal Lines contained such a forum selection clause. The portion of the bill of lading that was produced did

---

[4]     The Court assumes for purposes of this motion that the freight forwarder was, in fact, Minnesota-based C.H. Robinson International, Inc., despite the illegible bill of lading that Jacobs submitted. There is no evidence, however, regarding what relationship CHRistal Lines has to C.H. Robinson International, Inc. or to Minnesota.

not include or refer to a forum selection clause, nor did it include any other terms and conditions. Jacobs points the Court to a printout from the website of C.H. Robinson Europe, which states that "[w]here CHR is acting as a non-vessel operating common carrier and issues a CHRistal Lines ocean house bill of lading and the accompanying terms and conditions of service ('CHRistal Lines terms and conditions'), such CHRistal Lines terms and conditions shall apply." These CHRistal Lines terms and conditions contain the forum selection clause that Jacobs notes. But there is no evidence that CHRistal Lines issued the "CHRistal Lines terms and conditions" to Hicon, or that the same terms and conditions were in effect at the time the contract was entered into.  And there is no evidence indicating the relationship between C.H. Robinson Europe BV and C.H. Robinson International, Inc., the company purportedly identified as the freight forwarder in the bill of lading.

Second, even if the Court accepted that the shipping contract between Hicon and CHRistal Lines contained a forum selection clause, the clause does not help Jacobs in this case. As Jacobs states in its own brief, the purported forum selection clause relates to "all disputes with CHRistal Lines arising out of the transaction."  Pl.'s Second Supp. Mem. 3; *see also* Van Tassel Aff., Ex. E ("[A]ll lawsuits arising out of or related to carriage provided under the CHRistal Bill of Lading shall be brought in the United States District Court for the District of Minnesota.").  The current dispute is not with CHRistal Lines, nor does it arise out of or relate to CHRistal Lines' services.  Jacobs' claims are not based on the shipping contract between Hicon and CHRistal Lines.  The forum selection clause simply does not apply here.

Finally, Jacobs asserts that even if it cannot invoke the forum selection clause, the clause is nevertheless sufficient for Hicon to reasonably anticipate being haled into a Minnesota court, thus supporting a finding of minimum contacts.  But as explained above, Hicon's interaction and

contract with CHRistal Lines is not related to the cause of action in this litigation.  Although Hicon might anticipate litigating in Minnesota when disputes arise with CHRistal Lines or relate to the shipping of goods under the bill of lading, the forum selection clause did not provide Hicon with any reason to believe it could be brought into a Minnesota court for a dispute arising with Jacobs—a dispute that is unrelated to the shipment agreement.  The transaction between Hicon and Jacobs was complete in China, and Hicon's subsequent transaction with CHRistal Lines is not relevant for purposes of exercising specific personal jurisdiction in this litigation.

Jacobs points to one other, unrelated, contact Hicon has had with Minnesota.  In November 2011, Hicon allegedly sold some chest freezers to a different Minnesota-based purchaser.  As part of that transaction, Hicon sent emails to and conducted telephone conversations with the purchaser's personnel in Minnesota.  This limited sale and the accompanying communications do not support a finding of specific personal jurisdiction.  These contacts are completely unrelated to the current lawsuit.

Hicon has no other demonstrated contacts with Minnesota.  It has no offices, manufacturing plants, facilities, bank accounts, property, employees, phone numbers, mailing addresses, or registered agents in Minnesota.  It is not registered to conduct business in Minnesota.  It does not advertise in Minnesota—or any other part of the United States for that matter—and its website does not target residents of any particular country or state.  Jacobs initiated and pursued the business relationship with Hicon.  All of the events related to the sale of the coffeemakers at issue occurred in China.  Based on the parties' negotiations, lack of contemplated future consequences, terms of the contract, and the parties' actual course of dealing, there is no indication that Hicon purposefully established minimum contacts within Minnesota.

Jacobs argues that because this is a case for common-law and statutory fraud, the Court has personal jurisdiction under the "effects test" as articulated in *Calder v. Jones*, 465 U.S. 783, 790 (1984). In *Calder*, the United States Supreme Court held that when a defendant directs intentional, tortious actions at a resident in the forum, the defendant may reasonably anticipate being haled into court in the forum to answer for its conduct. *See id.* at 790. The *Calder* Court "made a sharp distinction between 'mere untargeted negligence' and 'intentional, and allegedly tortious, actions' aimed expressly at the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390 (8th Cir. 1991) (quoting *Calder*, 465 U.S. at 789). In cases alleging an intentional tort, the traditional five-factor test for minimum contacts "do[es] not provide a complete answer." *Id.* "In relying on *Calder*, we do not abandon the five-part test . . . . We simply note that *Calder* requires the consideration of additional factors when an intentional tort is alleged." *Id.* at 1391. The "effects test" "allows the assertion of personal jurisdiction over non-resident defendants whose acts 'are performed for the very purpose of having their consequences felt in the forum state.'" *Id.* at 1390-91(citation omitted). It requires that a defendant's actions be "uniquely aimed at the forum state and that the 'brunt' of the injury would be felt there." *Id.* at 1391.

Although *Calder* is described as the "effects test," "more than mere effects" supported the Supreme Court's holding in *Calder*. *Hicklin Eng'g, Inc. v. Aidco, Inc.*, 959 F.2d 738, 739 (8th Cir. 1992) (requiring that even when an intentional tort is alleged and the defendant knows a resident plaintiff will be affected, "more than mere effects" are necessary "to bestow personal jurisdiction"). To invoke *Calder*, the defendant must have had more than just knowledge that a Minnesota corporation would feel the injury arising from the alleged tortious conduct. *See, e.g.*, *Superior Edge, Inc. v. Maricopa Cnty. Cmty. Coll. Dist.*, 509 F. Supp. 2d 786, 794 (D. Minn.

2007); *Iowa Elec. Light & Power Co.*, 603 F.2d at 1306 ("[A] seller's knowledge that his product is 'destined' in some form for the forum is not necessarily sufficient contact with that state to confer jurisdiction over the seller, particularly in the absence of any other voluntary contacts with the forum state.").

Jacobs argues that this case is analogous to *Oriental Trading Co., Inc. v. Firetti*, 236 F.3d 938 (8th Cir. 2001). In *Oriental Trading*, a Nebraska corporation brought suit in Nebraska against residents of Virginia for breach of contract and misrepresentation. *Id.* at 942. The plaintiff, a buyer of crayons imported from China, alleged that the defendants made fraudulent representations that caused the plaintiff to make payments for purposes of satisfying nonexistent anti-dumping duties. The defendants argued that there was no personal jurisdiction over them in Nebraska because they had never physically entered the state—they had only made phone calls and sent faxes into Nebraska. *Id.* at 943. The district court ruled that it had personal jurisdiction over the defendants because they had intentionally directed their tortious conduct at residents of Nebraska and the brunt of the harm was felt there. *Id.* at 942. On appeal, the Eighth Circuit affirmed. *Id.* at 943. The defendants had initiated the business relationship, after approaching the plaintiff at a trade show. *Id.* at 942. The parties negotiated their contract by phone and fax, and the plaintiff signed the contract in Nebraska. *Id.* After the contract was signed, the defendants "maintained constant communication by phone and faxes" regarding the contract. *Id.* The fraudulent representations were made to the plaintiff in Nebraska. *Id.* at 943. After the statements were made, the defendants "made numerous phone calls and faxes and sent many invoices to [plaintiff] in Nebraska to implement their scheme." *Id.* Explaining that "[t]he lack of physical presence in a state cannot alone defeat jurisdiction," the court held that "[b]y purposely directing their fraudulent communications at residents of Nebraska, the defendants should have

realized that the brunt of the harm would be felt there and they should have reasonably

anticipated being haled into court there." *Id.* (citation omitted).

Unlike the defendants in *Oriental Trading*, Hicon did not initiate the business

relationship with Jacobs, and in this case there is no indication of "constant communication" or

"numerous phone calls and faxes" into the forum state.  And unlike *Oriental Trading*, the

allegedly fraudulent statements here were not made to the plaintiff in the forum state—the

communications between Marcotte and Hicon appear to have all occurred in China.[5]  There is no

indication that Jacobs signed the contract in Minnesota.  The factors that led the Eighth Circuit to

conclude that the defendants in *Oriental Trading* had purposely directed their tortious activity at

the forum state are not present here.

Unlike the cases in which *Calder* has been applied, there has been no showing here that

Hicon aimed its conduct at Minnesota, that Hicon intended to induce commercial activity in

Minnesota, or that Minnesota was somehow the focal point of the alleged wrongdoing.  In fact,

Jacobs does not even contend that Hicon directed its allegedly fraudulent communications to

Minnesota—it argues that Hicon "directed fraudulent communications at a *forum resident*."  Pl.'s

Supp. Mem. 5.  It does not even appear that the forum resident was in the forum at the time the

allegedly fraudulent communications were made.  The mere making of statements to a resident

of a forum state is not the same as directing activity toward the forum state.  *See, e.g.*, *Peterson*

*v. Wallace*, 622 F. Supp. 2d 791, 799 (D. Minn. 2008) (citing *Stangel v. Rucker*, 398 N.W.2d

602, 605 (Minn. Ct. App. 1986)); *Workmen Sec. Corp. v. Phillip Roy Fin. Servs., LLC*, No. 09-

CV-1723 (PJS/JSM), 2010 WL 155525, at *3 (D. Minn. Jan. 11, 2010) ("Having contact with a

---

[5]     Although Marcotte represented Jacobs, there is no allegation that Marcotte was
physically present in Minnesota when exchanging communications with Hicon.  According to
his own declaration, Marcotte actually lives in China under a business work permit.  Thus, it
appears that all communications and negotiations occurred entirely within China.

Minnesota *resident* is not the same as conducting activities within *Minnesota*." (emphasis in original)). The allegedly tortious activity occurred entirely outside of Minnesota. Hicon's statements were made in China, concerning a sale that occurred in China. All communications and negotiations occurred in China. Jacobs unilaterally sought out Hicon, initiated communications with Hicon, actively pursued a business relationship with Hicon, visited Hicon's warehouse in China, and consummated the sale in China. Hicon's allegedly fraudulent statements were not uniquely aimed at Minnesota—it was only a fortuity that the person to whom Hicon sold its products was a Minnesotan. Hicon sought no commercial benefit in Minnesota and did not purposefully avail itself of the privilege of conducting activities within Minnesota or invoke the benefits and protections of Minnesota laws.[6]

Jacobs argues that if it cannot sue Hicon in Minnesota, then it cannot sue Hicon in any state in the United States, and thus would be left "without a remedy." Pl.'s Supp. Mem. 2. Such an outcome, according to Jacobs, would not "comport with the notions of fair play and substantial justice." *Id.* Jacobs focuses on the burden it would bear if forced to litigate its claim in foreign courts, and on Minnesota's interest in providing redress for its citizens. While the convenience of the parties and the forum state's interest in providing a forum for its residents are factors to consider, these factors are secondary to consideration of the nature, quality, and quantity of the defendant's contacts with the forum state. *Nw. Airlines*, 111 F.3d at 1390. The

---

[6]     During oral argument, Jacobs argued that Hicon did, in fact, receive the benefits and protections of Minnesota laws because Hicon *could have* sued Jacobs in Minnesota, thus invoking the protection of Minnesota courts. But Hicon has never brought suit in Minnesota. Further, Jacobs' argument turns personal jurisdiction on its head. By asserting that anyone who *could* sue a Minnesota resident in Minnesota is in turn subject to personal jurisdiction in a Minnesota court, Jacobs renders this Court's exercise of personal jurisdiction limitless. Almost anyone can sue a Minnesota resident in Minnesota, so under Jacobs' theory, nearly everyone in the world would be subject to personal jurisdiction in this forum. That is clearly not the law and would not comport with due process.

Court cannot ignore the paucity of contacts between Hicon and Minnesota.  The notions of fair play and substantial justice do not require the Court to ignore the entirety of personal jurisdiction jurisprudence.

Viewing the record in the light most favorable to Jacobs, the Court concludes that Jacobs has not established a prima facie case of personal jurisdiction over Hicon in Minnesota.  While it may be inconvenient for Jacobs to litigate its claim elsewhere, due process requires that Hicon actually *do* something such that it may reasonably anticipate being haled into court in this forum. There is no evidence that Hicon purposefully availed itself of Minnesota's protections and laws or that Hicon's allegedly tortious act was "uniquely or expressly aimed" at Minnesota or "performed for the very purpose of having [its] consequences felt" in Minnesota.  *See Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 594-95 (8th Cir. 2011).  Specific jurisdiction does not exist.

**B.  General Jurisdiction**

"A court may assert general jurisdiction over foreign corporations only if they have developed 'continuous and systematic general business contacts' with the forum state, '[so] as to render them essentially at home in the forum State.'"  *Viasystems, Inc.*, 646 F.3d at 595 (citations omitted).  "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.'"  *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853-54 (2011)).

Jacobs asserts that Hicon has other, ongoing contacts with Minnesota.  It relies in part on the conclusory and unsupported assertions that other unnamed retailers believe that Hicon has made sales in Minnesota.  Jacobs also cites to Hicon's website, which proclaims sales through

"international supermarkets like WAL-MART . . . and Home Depot."  The website also states

that Hicon imports equipment from the United States, and that Hicon's products "sell well" in

numerous markets, including in the United States.  But the website does not indicate any contacts

with Minnesota, nor does it target residents of Minnesota.[7]   It provides no evidence of

"continuous and systematic" contacts with Minnesota, or with the United States, so as to render

Hicon "essentially at home in the forum State."  *See Viasystems, Inc.*, 646 F.3d at 595.

Jacobs also points to a third-party website, which purportedly reviews United States

customs data and compiles the information into a database.  Jacobs asserts that a customer list

produced through a search on this website indicates that between 2007 and 2011, Hicon made

twenty shipments to four Minnesota companies, including the shipment to Jacobs at issue in this

case.  This website is not admissible evidence.  Further, Jacobs has not provided the Court with a

copy of this customer list, so there is nothing before the Court indicating any Minnesota contacts.

The website allegedly reveals that the twenty shipments were sent to Minnesota *companies*—it

does not indicate that the shipments were sent into Minnesota.  Even if the shipments were sent

into Minnesota, the website does not indicate how the shipments got here—they could have been

sent through third-party retailers and not by any activity on the part of Hicon.  Moreover, a total

of twenty individual shipments to only four Minnesota companies over a period of more than

four years does not constitute such "continuous and systematic" contacts with the forum such

that this Court could exercise general personal jurisdiction over Hicon.  *See Goodyear Dunlop*

---

[7]      The website itself is insufficient to confer jurisdiction over Hicon.  It is a passive website, through which consumers cannot make orders.  The only interaction consumers can have through the website is that they may click on a link to email Hicon.  "'A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.'"  *Lakin v. Prudential Sec., Inc.*, 348 F.3d 704, 710-11 (8th Cir. 2003) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997))

*Tires Operations*, 131 S. Ct. at 2856 ("A corporation's 'continuous activity of some sorts within a state . . . is not enough to support the demand that the corporation be amenable to suits unrelated to that activity.'" (quoting *Int'l Shoe*, 326 U.S. at 318)); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("[M]ere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions."); *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1103 (8th Cir. 1996) ("Simple commercial contacts, unrelated to [plaintiff]'s claims are insufficient to establish [general] personal jurisdiction.").

After conducting jurisdictional discovery, Jacobs provided evidence of only one additional transaction with a Minnesota-based purchaser.  There is nothing to indicate that Hicon had such "continuous and systematic" contacts with Minnesota to subject it to this Court's exercise of general personal jurisdiction.

**C.  Venue**

Venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred" or "any judicial district in which any defendant is subject to the court's personal jurisdiction."  28 U.S.C. § 1391 (2006).  Hicon argues that Minnesota is not the proper venue for this case because Hicon is not subject to personal jurisdiction in Minnesota and a substantial part of the events giving rise to this claim occurred outside of Minnesota.  A court "in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  *Id.* § 1406(a).  For the reasons discussed above, the Court agrees that Hicon is not subject to personal jurisdiction in Minnesota and that a

substantial part of the events giving rise to the claims in this case did not occur in Minnesota. Both parties here have apparently conceded that there is no other district in the United States where this litigation can be pursued.  Thus, the Court finds a transfer of venue to be inappropriate and dismissal is warranted.

## D.  Request for Leave to Amend the Complaint

In its first supplemental memorandum, Jacobs requested that the Court deny the motion to dismiss, or alternatively, permit Jacobs to amend its complaint to allege a cause of action under the Lanham Act, 15 U.S.C. § 1125 (2006).  Jacobs asserts that the addition of a federal claim would satisfy the jurisdictional requirements under Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Local Rule 15.1 provides that "[a] party who moves to amend a pleading shall file such motion and shall attach to the motion . . . a copy of the proposed amended pleading . . . ."  Jacobs has not filed a Motion to Amend nor has it submitted a copy of the proposed amended pleading, and thus has failed to comply with this procedural requirement.  *See Meehan v. United Consumers Club Franchising Corp.*, 312 F.3d 909, 913 (8th Cir. 2002) ("A district court does not abuse its discretion in failing to invite an amended complaint when plaintiff has not moved to amend and submitted a proposed amended pleading." (internal quotation marks omitted)); *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985) (finding the district court did not abuse its discretion in failing to grant leave to amend where the plaintiff "merely concluded her response to the [defendant]'s motion to dismiss with a request for leave to amend" and did not submit a proposed amendment along with her motion). [8]  Jacobs' request is denied.

---

[8]     Rule 4(k)(2) requires that jurisdiction be "consistent with the United States Constitution and laws." Fed. R. Civ. P. 4(k)(2).  Jurisdiction under this Rule is only proper if Jacobs could satisfy constitutional due process requirements, including a showing of minimum contacts.  *See*

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.  Defendant Hicon's Motion to Dismiss [Docket No. 9] is GRANTED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 30, 2012

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge

---

Fed. R. Civ. P. 4, advisory committee notes (1993 Amendments) (explaining that even under Rule 4(k)(2), "[t]here remain constitutional limitations on the exercise of territorial jurisdiction by federal courts over persons outside the United States").  Jacobs has not shown that it can satisfy this requirement.  Jacobs is likely in any event to lack standing to bring a claim under the Lanham Act.  If so, it would be futile for Jacobs to amend its pleading.  *See United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 822 (8th Cir. 2009) ("Futility is a valid basis for denying leave to amend.").